IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BILLY HORTON, ROBERT MORRIS, ROBERT PRUNTY, ALAN SPURGIN, DAVID RATCLIFF, and SAM BIGHAM, individually and on behalf of similarly situated individuals, | §<br>§<br>§<br>§<br>§ | |
| | § | Civil Action No. 4:10-cv-372 |
| Plaintiffs, | § | ECF |
| -v- | §<br>§ | |
| CITY OF PLANO, | § | |
| Defendant. | § | |

JOINT MOTION FOR ORDER APPROVING SETTLEMENT AND
JUDICIAL NOTICE TO OPT-IN CLASS MEMBERS

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Come now the Named Plaintiffs, Billy Horton, Robert Morris, Robert Prunty, Alan Spurgin, David Ratcliff, and Sam Bigham (the "Named Plaintiffs"), individually and on behalf of similarly situated individuals, (collectively "Plaintiffs" or the "Class") and Defendant, the City of Plano, ("Defendant" or "Plano" or the "City") and file this Joint Motion for Order Approving Collective Action Settlement and Judicial Notice to Opt-In Class Members, and respectfully show the following:

I.
SUMMARY

In this Fair Labor Standards Act ("FLSA" or "Act") collective action, the Named Plaintiffs and Defendant jointly request that the Court enter a stipulated order (1) approving the Settlement Agreement and (2) providing for notice to be sent to class members informing them of their right to participate in the settlement. This Court should approve the Settlement Agreement because it is fair to the Plaintiffs.

The Parties have carefully and exhaustively negotiated the Settlement Agreement, which is attached as Exhibit 1.  The Settlement Agreement fully resolves all disputed factual and legal issues, provides for the mechanism of effectuating the settlement, and will result in a final dismissal of this action with prejudice.  As is typical in FLSA cases, the Parties seek this Courts' approval of the settlement.

Under the terms of the Settlement Agreement, Plano has agreed to pay 100% of the claimed unpaid FLSA overtime wages for lunches and pre-work hours.  Plano has agreed to pay 100% liquidated damages, effectively doubling the unpaid wages.  Plano has agreed to a modest incentive award to the Named Plaintiffs as well as a smaller award to those Opt-in Plaintiffs who have actively participated in the lawsuit.  For purposes of computing the damages, the Parties assumed that Plaintiffs and potential Opt-in Plaintiffs were shorted thirty minutes of lunch time every day and that supervisors arrived thirty minutes early every day; both of which are reasonable assumptions.  Plaintiffs conceded to a two year rather than three year statute of limitations, a fair compromise.  Plaintiffs also conceded that after-hours time spent on call was not compensable time where Plaintiffs were not recalled to work, and additionally conceded that they were, and have been, properly compensated in those instances where they were, in fact, recalled to work.

Even after attorney fees and costs, every Plaintiff will receive "in his pocket" an amount that is greater than the actual amount of unpaid overtime wages for lunches and pre-work hours claimed in the lawsuit.  Such a result is clearly fair and equitable to the Plaintiffs.

The settlement fund is available to a class of all persons employed by Defendant in the Public Works Department that (a) monitored hand-held radios and responded to calls during their scheduled lunch period during the period beginning July 27, 2008 to January 1, 2010 and/or (b)

who were supervisors who worked prior to scheduled work hours in the morning.[1]  The Parties agree that this would include the six (6) Named Plaintiffs, the ten (10) individuals who have already filed consents to join the lawsuit with the Court, and nine (9) additional employees or former employees who will be given the opportunity to opt-in to the lawsuit.  Therefore, the parties anticipate a total class of twenty-five (25) former and/or current employees.

Importantly, pursuant to §216 of the FLSA, this is an opt-in class settlement and only those employees who opt-in by signing the Settlement Agreement or, alternatively, by returning a Consent to Join/Opt-in Form and Release within the time prescribed by the Court—binding them to the terms of the Settlement Agreement—will be bound by the settlement.  The six (6) Named Plaintiffs have each personally signed the Settlement Agreement.  The nineteen (19) Opt-In Plaintiffs will not be bound by the Settlement Agreement unless they choose to timely sign and return a release.  In contrast to a FED. R. CIV. P. 23 class settlement, participation in this FLSA settlement is *voluntary*.

Generally, the settlement contemplates the creation of a settlement fund and the payment of Five Hundred and Fifty Four Thousand Three Hundred Thirty Three dollars ($554,333) by Defendant in full settlement and resolution of all claims, including costs, expenses, and attorney fees.

If required by the Court (although not necessary for resolution), the Parties will appear for a hearing to orally present the Settlement Agreement to the Court and respond to any questions.

The Court will find, after reviewing the settlement, that the agreement is fair to Plaintiffs and should be approved.  The Settlement Agreement reflects a reasonable compromise of

---

[1] The Parties mutually recognize that not all potential Opt-in Plaintiffs qualify for inclusion in both of these categories.

disputed issues; the settlement was reached in an adversarial context in which the Named Plaintiffs and the Class were represented by competent and experienced counsel; and the totality of the proposed settlement is fair and reasonable to the Class.

## II.
## PROCEDURAL HISTORY

The subject litigation was filed on or about July 7, 2010.  Defendant answered on or about August 19, 2010.

On May 9, 2011, the Named Plaintiffs and Defendant mediated the case without resolution.  Further settlement conferences were held between counsel for Plaintiffs and Defendant on September 15, 2011 and October 17, 2011.  On or about November 15, 2011, a settlement was reached in principle, which lead to the Settlement Agreement at issue.

The Named Plaintiffs and Defendant have engaged in discovery including depositions and written discovery, which concluded on September 2, 2011.  Plaintiffs filed a Motion to Certify Class Conditionally and Approve Judicial Notice on April 21, 2011, which was mooted by the Court after the Parties announced a preliminary settlement had been reached.  The Court has abated further deadlines, and all that remains is the Court's consideration of this motion.

## III.
## SETTLING PARTIES AND CLAIMS

The Settlement Agreement is a full and final settlement of all claims.

A.      Parties

Defendant is a home-rule municipal corporation organized and existing under the laws of the State of Texas.  This suit was filed on behalf of a group of the Defendant's employees who work in the Defendant's Public Works Department.  Specifically, these employees all work on maintaining and improving various areas of the Defendant's infrastructure (streets, traffic

signals, sewers, water systems, etc.).  The Named Plaintiffs and Opt-In Plaintiffs generally were either supervisors or non-supervisors in the Public Works Department, all of whom were paid as hourly workers.  The Plaintiffs asserted multiple claims for unpaid wages.

B.      Lunch Time Claims

Plaintiffs alleged that they were required to both monitor their hand-held radios and respond to calls during their lunch time; and were therefore entitled to compensation during their lunch time.  Plaintiffs alleged that Defendants deducted thirty minutes of lunch time per day that should have been compensable time.

Under the Settlement Agreement, Plaintiffs and Opt-in Plaintiffs will receive 100% of their lunch time FLSA overtime wages, plus 100% liquidated damages for the period applicable to each between the dates of July 27, 2008 through January 1, 2010.

C.      Before Work Claims

Plaintiffs alleged that hourly supervisors were required to begin work before their scheduled start time of 7:00 a.m.  By its nature, this claim was asserted solely by those Plaintiffs who were employed by the Defendant as hourly supervisors.  Supervisor Plaintiffs alleged that they were required to arrive prior to the scheduled start time of 7:00 a.m. in order to have their crews out on time.

Under the Settlement Agreement, hourly supervisor Plaintiffs and Opt-in Plaintiffs will receive 100% of their pre-work FLSA overtime wages, plus 100% liquidated damages for the two year limitations period.

D.      On-Call Claims

Five Named Plaintiffs and three opt-in Plaintiffs also alleged that they should have been paid for time spent on call.  Defendant was expected to argue that time spent on call is not

compensable time.  *See, e.g. Bright v. Houston N.W. Med. Ctr. Survivor*, 934 F.2d 671 (5th Cir. 1991); *Brock v. El Paso Nat. Gas Co.*, 826 F.2d 369, 373-75 (5th Cir. 1987); *Gilligan v. City of Emporia*, 986 F.2d 410, 412-13 (10th Cir. 1993) (holding that city water and sewer department employees were not entitled to overtime compensation for time spent on call, despite restrictions).   Under the Settlement Agreement, Plaintiffs forego claims for on call time, recognize that they were compensated for all time they were recalled to work, and agree to dismiss this claim with prejudice to the refilling of same.

E.     Contract Claims.

Plaintiffs also asserted breach of contract claims mirroring their FLSA overtime claims. Defendant was expected to argue that the FLSA preempts state claims for unpaid overtime.  *See, e.g. Coberly v. Christus Health*, 3:10-cv1213-L (N.D.Tex. Nov. 3, 2011) (Lindsay, J.) (citing the First Circuit, Fourth Circuit, and four district courts within the Fifth Circuit).   Defendant was also expected to argue that, as a Texas municipality, it is entitled to governmental immunity from breach of contract claims.  *See e.g. City of Dallas v. Albert*, 07-0284 (Tex. Aug. 26, 2011); *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006).   Under the Settlement Agreement, Plaintiffs forego a separate recovery for the breach of any contract claims that may have arisen out of their employment with the City, which recovery would have been duplicative of recovery under the FLSA, and agree to dismiss this claim with prejudice to the refilling of same.

F.     Resolution

Defendant vigorously disputes both the legal and factual grounds of Plaintiffs' claims. However, resolution was reached when Defendant agreed to fully compensate Plaintiffs for lunch time and before work claims, and Plaintiffs agreed to forego on call and breach of contract claims.

The Settlement Agreement is the result of long and protracted negotiation.   Settlement was only achieved after discovery had been completed; after a failed mediation and multiple face-to-face settlement conferences; and after stringent review by Defendant's counsel, the City Attorney, and the City Council.

The Parties are now fully committed to the settlement and the full, final resolution of all claims.

## IV.
## CALCULATION OF THE SETTLEMENT AMOUNT

The settlement terms are fair and equitable to the Plaintiffs.   Under the Settlement Agreement, Defendant will set aside Five Hundred and Fifty Four Thousand Three Hundred Thirty Three dollars ($554,333) as a settlement fund to settle this lawsuit. The Parties agree that this settlement fund is adequate to compensate all of the Plaintiffs and potential Opt-in Plaintiffs who are encompassed by this litigation and the settlement thereof, and that this fund represents the entirety of the settlement payment that will be made by the City should each and every one of the Plaintiffs and potential Opt-in Plaintiffs choose to take part in this settlement of claims, with any funds not distributed pursuant to this settlement returning to the City.   The fund is intended to settle any unpaid and/or underpaid wages to Public Works employees and to settle any other damages under the Act, including attorney fees, expenses, and court costs, as well as taxable costs of any nature.

A.      Lunch Time Claims

The Parties have agreed to compensate Plaintiffs for two and a half (2.5) hours of overtime pay per week during the relevant statutory period, limited to the amounts set forth in this Agreement.   For the Named Plaintiffs, the settlement amount is calculated based on a statutory period from July 27, 2008 to January 1, 2010.   For Qualified Claimants who have

already filed consent forms with the Court, the settlement amount is calculated based upon a statutory period from September 27, 2008 to January 1, 2010. For potential Qualified Claimants who have not yet consented to opt-in to this lawsuit, the settlement amount is calculated based on a statutory period from October 18, 2009 to January 1, 2010.  Each of these time periods is based on the Act's two-year statute of limitations period as applied to when each Plaintiff joined this suit.

B.      Before Work Claims

The Parties have agreed to compensate class members who worked as non-exempt supervisors, including Billy Horton, Robert Morris, Robert Prunty, Alan Spurgin, David Ratcliff, Sam Bigham, Homer Goode, Jeff Turner, Sr., Cedric Dunn, Josh Shultz, Dale Pettit, Scott Simants, Charles Alexander, Jerome Holland, and Ken Plagge, for two and a half (2.5) hours of overtime pay per week during the relevant statutory period, limited to the amounts set forth in this Agreement. All hourly supervisor Plaintiffs will receive two years of pre-work wages pursuant to the calculation stated in the preceding sentence, reflecting the two year statute of limitations.

C.      Liquidated Damages.

The Parties have agreed to compensate all class members with liquidated damages in the amount of 100% of the calculated unpaid wages.

D.      Incentive Award

The Parties have agreed to provide an incentive award for class members who participated in the lawsuit prior to the settlement of this matter.  This award is compensation for the services rendered for the benefit of the Class.   Such services include responding to interrogatories, providing documents, being deposed, and undertaking the other obligations

which parties to litigation must bear during the course of ongoing legal proceedings.  During the course of litigation, these Plaintiffs had to take vacation days to attend depositions, otherwise assist with the litigation of the case, and were willing to come forward to assert what, in their minds, constituted claims against their employer.

The incentive award is Seven Thousand dollars ($7,000.00) for each of the six (6) Named Plaintiffs and One Thousand Eight Hundred dollars ($1,800.00) for each of the ten (10) existing Opt-In Plaintiffs.

The incentive awards contemplated in this case are in accord with incentive awards in other cases.  Incentive awards are appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  Incentive awards of $10,000-$20,000 are commonplace.  *See id.* (awarding over $10,000 as an incentive award); *McClain v. Lufkin Indus. Inc.*, 9:97-cv-0063 (E.D.Tex. Jan. 15, 2010), *aff'd*, 649 F.3d 374 (5th Cir. 2011), *cert. denied*, 11-356 (U.S. Nov. 14, 2011) (participation awards to twenty-two FLSA plaintiffs and class members ranging from $1,000 to $18,000); Fahry v. *Janney Montgomery Scott, LLC et al.*, 2:06-cv-03202 (E.D.Pa. July 16, 2009) ($20,000 to each named plaintiff); *Stevens v. Safeway, Inc. et al.*, 2:05-cv-01988 (C.D.Cal. Feb. 25, 2008) ($20,000 to one named plaintiff and $10,000 to another).

E.    Attorney Fees

The attorney fee is reasonable.  As is the usual practice, the undersigned Plaintiffs' counsel accepted this case on a contingency basis on behalf of the Named Plaintiffs and the putative class.  Under the Settlement Agreement, Class Counsel will be paid forty percent (40%)

of the settlement for attorney's fees as well as reimbursed for costs advanced by the firm.  The total recovery fund in this case is Five Hundred Fifty Four Thousand Three Hundred Thirty Three dollars ($554,333); Two Hundred Twenty Six Thousand Seven Hundred Thirty Five dollars and Eighty Three cents ($226,735.83) is set aside for attorney's fees, expenses, court costs and any other taxable costs, while Three Hundred Twenty Seven Thousand Five Hundred Ninety Six dollars and Eighty Seven cents ($327,596.87) is paid directly to the Plaintiffs and any Opt-in Plaintiffs, assuming that all potential claimants opt-in to this settlement.

The Supreme Court has long recognized that an attorney who recovers a common fund for the benefit of persons other than his client is entitled to reasonable attorneys' fees from the fund as a whole.  *Turstees v. Greenough*, 105 U.S. 527 (1882); *Central Railroad & Banking of Georgia v. Pettus*, 113 U.S. 116 (1885).  The underlying justification for paying a percentage of a common fund is that "unless the cost of litigation is spread to the beneficiaries of the fund they will be justly enriched by the attorneys' efforts."  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993).  In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court noted that "under the 'common fund doctrine'. . . a reasonable fee is based on the percentage of the fund bestowed on the class."  *See also, Shaw v. Toshiba America Information Systems, Inc.* 91 F. Supp 2d 942, 963 (E.D. Tex. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 24.12, at 189 (3d ed. 1995)); *Longdell v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992) (approving district court's percentage fee award "as a matter of policy" in a securities class action).

In this case, Plaintiffs' counsel entered into retainer agreements with the six Named Plaintiffs and eight Opt-In Plaintiffs.  Each of these retainer agreements calls for attorney fees to be paid on a contingency basis of 40% of the gross recovery.  Consistent with these retainer agreements, the Settlement Agreement awards class counsel 40% of the total recovery.  This

amount is within the range of fee awards in common fund cases.  *See e.g., Cone v. Dekra Emission Check, Inc.*, 3:04-cv-1191-B (N.D.Tex. Mar. 4, 2005) (Boyle, J.) (approving 40% attorney fee and $7,000 in costs in an FLSA settlement); *General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820-22 (3rd Cir. 1995) (awarding 40% as a reasonable fee); *Braud v. Transp. Serv. Co. of Ill.*, 2:05-cv-1898 (E.D.La. Aug. 17, 2010) (awarding 40% in a class case and citing three other recent cases within the Fifth Circuit awarding 40% of the settlement fund); *In re Bayou Sorrel Class Action*, 6:04-cv-1101 (W.D.La. Oct. 31, 2006) (approving award of 40% of settlement pool where retainer agreements provided for a 40% contingency fee); *see also In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("Traditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions.").

Class Counsel works in a market shared by very few attorneys in Texas: a contingent-fee practice specializing in Plaintiffs' FLSA collective action litigation.  Mr. Wiley is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization.  Mr. Wiley's primary focus on employment law permits him to develop a depth of experience and expertise in collective action litigation.  The attorney fee is further justified because nearly all work done by Mr. Wiley and his associates (including all work in this case) is done on a contingency fee basis.  *See City of Burlington v. Dague*, 505 U.S. 557 (1992).  In *Dague*, the Supreme Court stated that attorneys who regularly are willing to undertake contingent cases can command a higher rate to compensate the risk of loss.  *Id*. at 562.  In addition, contingent cases taken in the FLSA collective action context require a large commitment of time and financial resources.  Based on these factors the percentage charged by class counsel are reasonable.

The Law Office of Rob Wiley, P.C. is a small law firm, employing six attorneys.  It handles both collective and individual FLSA cases.  Litigating a collective action requires a high level of specialized skill, including case management skills not required in the typical case.  The commitment of time and staff in a collective action, especially one as large as this, severely limits the ability of class counsel to take on new business while a case such as this is pending on its docket.

"The most critical factor in determining reasonableness of fee awards is the degree of success obtained."  *Dugas v. Jefferson County*, 931 F. Supp. 1315 (E.D.Tex. 1996) *aff'd sub nom. Dugas v. Jefferson County, Texas*, 127 F.3d 33 (5th Cir. 1997) (*quoting Farrar v. Hoby*, 506 U.S. 103, 114 (1992)).  The results obtained in this case were fair and equitable to the Plaintiffs.  The class will include all persons employed by Defendant in the Public Works Department who either carried hand held radios during their lunch time and/or were hourly supervisors.  The lost wage calculation ensures each employee is fully compensated for unpaid and underpaid wages.

Given the results in this case, which fully compensate the Plaintiffs for their actual lost wages; given that the Named Plaintiffs agreed to a 40% fee when signing their retainer agreements and when signing the Settlement Agreement; and given that other courts regularly approve similar fee awards, the Court should approve the Settlement Agreement as fair to the Plaintiffs.

F.   Amounts Awarded

Settlement Payments made to Plaintiffs will be made by the issuance of two checks, if applicable.  The unpaid wage portion and the incentive award portion will be paid in the form of a paycheck.  The liquidated damages will be paid by a regular check for which Plaintiffs will

each receive a 1099.   The forty percent attorney fee and cost portion is deducted from the liquidated damages portion (which has benefits to Plaintiffs both with retirement contributions and for FICA tax).

The settlement provides that the Named Plaintiffs, the opt-in Plaintiffs, should they opt-in to this settlement, and counsel will receive the following funds:

| Name | Gross Paycheck Amount (Subject to Withholding and customary deductions) | Regular Check Amount (Subject to 1099) | Total Award |
|---|---|---|---|
| Billy Horton | $25,999.56 | $799.80 | $26,799.37 |
| Robert Morris | $24,523.74 | $504.64 | $25,028.37 |
| Robert Prunty | $25,517.03 | $703.30 | $26,220.33 |
| Alan Spurgin | $22,259.97 | $51.88 | $22,311.85 |
| David Ratcliff | $22,387.30 | $77.35 | $22,464.65 |
| Sam Bigham | $22,414.11 | $82.71 | $22,496.82 |
| Homer Goode | $17,618.42 | $2,243.57 | $19,861.99 |
| Jeff Turner, Sr. | $19,380.97 | $2,596.08 | $21,977.05 |
| Cedric Dunn | $19,508.23 | $2,621.54 | $22,129.76 |
| Josh Schultz | $14,526.00 | $1,625.09 | $16,151.09 |
| Dale Pettit | $19,380.97 | $2,596.08 | $21,977.05 |
| Herschel Toberman | $6,923.04 | $104.50 | $7,027.54 |
| Richard A. Coughlin | $7,957.50 | $311.39 | $8,268.89 |
| Eugene Robbins | $7,260.47 | $171.98 | $7,432.46 |
| Frederick Miles | $6,753.09 | $70.51 | $6,823.60 |

| Jeff Turner, Jr. | $5,694.56 | $0 | $5,694.56 |
|---|---|---|---|
| Scott Simants | $13,113.33 | $2,422.56 | $15,535.89 |
| Charles Alexander | $12,611.45 | $2,322.18 | $14,933.63 |
| Jerome Holland | $840.84 | $0 | $840.84 |
| Ken Plagge | $2,653.89 | $330.67 | $2,984.56 |
| Terry Whitehead | $1,948.73 | $189.64 | $2,138.37 |
| Alfred Fuentez | $2,219.87 | $243.86 | $2,463.73 |
| Billy Williamson | $2,056.43 | $211.18 | $2,267.60 |
| Larry Morales | $2,019.43 | $203.78 | $2,223.21 |
| Chris Ratcliff | $1,453.14 | $90.52 | $1,543.66 |
| Law Office of Rob Wiley, P.C. | $0 | $226,735.83 | $226,735.83 |

Any amount allocated to an Opt-In Plaintiff listed above who does not ultimately choose to opt-into the settlement shall revert to the City.

## V.
## METHOD OF SATISFACTION OF SETTLEMENT

The Settlement Agreement establishes an opt-in class of all Public Works employees who (1) carried a hand-held radio during lunch and responded to calls and/or (2) who was an hourly supervisor during the applicable time period who worked before his or her scheduled shift.  Each employee will receive a Notice of Settlement and Opportunity to File Consent to Join/Opt-In Form and Release ("Notice"), which is attached to the Settlement Agreement.

The Notice contains a description of the settlement and informs members of the settlement class how to participate in the settlement if they so choose.  Along with the Notice, each opt-in class member will receive a Consent to Join/Opt-In Form and Release ("Consent to

Join"), which contains a general release and a covenant not to sue. The Consent to Join is also attached to the Settlement Agreement.

In order to participate in the settlement, an opt-in class member must have postmarked (or faxed) an executed Consent to Join within thirty (30) days of the date of mailing of the notice letters. A pre-addressed and stamped envelope will be provided to all putative opt-in class members for this purpose. Class members who opt-in will receive the payment in the respective amounts noted above.

Once the payments have been made, class counsel will file a Final Report and Stipulation of Dismissal With Prejudice.

VI.

LEGAL JUSTIFICATION FOR SETTLEMENT APPROVAL

This Court should approve the Settlement Agreement because the settlement was achieved in an adversarial context, the Named Plaintiffs and the class are represented by competent and experienced counsel and the Settlement Agreement reflects a reasonable compromise over disputed issues. Moreover, the settlement provisions are fair. Specifically the amount of settlement and method of division are fair and reasonable.

Two methods of settling a FLSA claim are clearly established: (1) the Secretary of Labor can supervise the payment of back wages, or (2) the employer and employee present the proposed settlement to the district court for approval. 29 U.S.C § 215(b); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). The Parties request this Court to approve the attached Settlement Agreement, Notice, and Consent to Join form. A district court, when reviewing a proposed settlement of an FLSA claim, must "scrutinize the settlement for fairness" and decide whether the proposed settlement agreement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. There are four

factors that the parties request the district court use to examine whether to approve this FLSA settlement:

1. Was the settlement achieved in an adversarial context?

2. Were the Plaintiffs represented by counsel who can protect their rights?

3. Does the settlement reflect a reasonable compromise over issues that are actually in dispute?

4. Is the settlement fair?

*Id.* at 1353-54.

A.     The Settlement Agreement was Achieved in an Adversarial Context

The Settlement Agreement was achieved only after a suit had been filed and this case had been substantially litigated.  Discovery had been fully conducted, including multiple rounds of written discovery and numerous depositions.  The Settlement Agreement was only achieved after a failed mediation and multiple face-to-face settlement conferences.

B.     Plaintiffs had adequate counsel

Plaintiffs were represented by counsel experienced with employment law and with FLSA actions.  Class Counsel consists of the Law Office of Rob Wiley, P.C. and four of its attorneys: Robert J. Wiley, Justin G. Manchester, Gregory A. Placzek, and Caitlin S. Connors.

Mr. Wiley graduated from Tulane Law School, *cum laude*.  Mr. Wiley is licensed to practice law in Texas, California, and Washington, D.C.  Mr. Wiley is Board Certified in Labor and Employment law by the Texas Board of Legal Specialization and has been since 2004.  Mr. Wiley is a member of the National Employment Lawyers Association and the Texas Employment Lawyers Association.  Mr. Wiley is also the president of the Dallas-Fort Worth Employment Lawyers Association.  Mr. Wiley has been a speaker and moderator at conferences

hosted by these organizations, the Dallas Bar Association, and the State Bar of Texas.  Mr. Wiley is the sole owner of Rob Wiley, P.C., a law firm, and he oversees five highly qualified associate attorneys.  Mr. Wiley has served, or is currently serving, as lead counsel in at least seventeen (17) other FLSA actions.

Mr. Manchester has been the primary associate attorney assigned to this case.  Mr. Manchester is an experienced litigator.  Mr. Manchester graduated from Baylor Law School and is licensed to practice law in the state of Texas.  Mr. Manchester is a member of the National Employment Lawyers Association, the Texas Employment Lawyer's Association, the Dallas-Fort Worth Employment Lawyers Association, and the Dallas Bar Association.  Prior to joining Rob Wiley, P.C., Mr. Manchester interned for the Honorable Judge Walter Smith of the Western District of Texas.

Mr. Placzek is an associate assigned to this case.  Mr. Placzek is an experienced litigator.  Mr. Placzek graduated *magna cum laude* from the Southern Methodist Law School, where he graduated sixth in his class.  Mr. Placzek is licensed to practice law in both Texas and Missouri.  Mr. Placzek is a member of the National Employment Lawyers Association, the Texas Employment Lawyer's Association, and the Dallas-Fort Worth Employment Lawyers Association.

Ms. Connors is an associate assigned to this case.  Ms. Connors graduated from the University of Texas School of Law with honors.  Ms. Connors is licensed to practice law in the State of Texas and New York.  Ms. Connors is a member of the National Employment Lawyers Association and the Dallas-Fort Worth Employment Lawyers Association.  Prior to joining the firm Ms. Connors interned for the Honorable H. Robert Mayer of the United States Court of Appeals for the Federal Circuit.

Class Counsel dealt directly with many employees.   Class Counsel engaged in an extensive investigation to determine the precise job duties of these employees, how these employees were paid, and what evidence would be available to prove Plaintiffs' case.   Class Counsel also had to investigate non-supervisory employees of the Public Works Department as well as those employees who did not carry hand held radios to determine the limits of the class and delineate those employees who would be "similarly situated" to the named Plaintiffs.

Class Counsel engaged in significant research concerning the FLSA, related case law and Department of Labor rule making, regulations and opinion letters regarding the compensability of on-call time, the delineation of work versus on-call time, the compensability of an employee's lunch time dependent on whether an employee is completely relieved of duty, the compensability of pre-start time work, whether any time was *de minimis*, as well as state law claims for breach of contract related to the Defendant's policies and procedures.   Administrative law can be much more difficult and time consuming to research than case law because documents are longer and are rarely annotated or indexed.   Furthermore, because the Department of Labor is more politicized than the courts, Department opinion letters and interpretations often vary administration to administration.   This can lead to confusing and even contradictory holdings by the Department of Labor.

Class Counsel has performed extensive work throughout the initial phases of the case through discovery.   Class Counsel drafted the pleadings, researched and drafted a Motion for Class Certification, drafted multiple discovery requests sent to Defendant, responded to Defendant's multiple discovery requests, took depositions, defended an additional six (6) depositions, drafted the settlement documents filed with this Court, incidental agreements of the parties, and the preliminary settlement agreement that led to the instant filing.

Class counsel is competent and diligently represented the Named Plaintiffs and the class.

C.       The Settlement is a Reasonable Compromise of Issues in Actual Dispute

Like most settlements, the Settlement Agreement contains a compromise between Plaintiffs and the Defendant.  On the one hand, Plaintiffs are receiving the full amount of unpaid wages for lunch time and for pre-work activities.  Furthermore, Plaintiffs are receiving full liquidated damages.  The Defendant has also agreed to a reasonable incentive award for those Plaintiffs that participated in the suit prior to settlement.  On the other hand, Plaintiffs have agreed to a two-year rather than a three-year statute of limitations.  Plaintiffs have also foregone and released claims for on-call time and for breach of contract.  This is a reasonable compromise of the matters in dispute.

The two-year statute of limitations is the ordinary statutory time period.  To obtain a three-year statutory period, a plaintiff must prove that the defendant acted with malice.  *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 355 (5th Cir. 1990); *Mireles v. Frio Foods*, 899 F.2d 1407, 1416 (5th Cir. 1990).  This requires the plaintiff show the defendant's violation was willful.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  Due to the difficulty of this standard, compromising on two years as the statutory period is a reasonable.

In deciding to compromise on the issue of on-call time, the Plaintiffs recognized that on-call compensation is their weakest claim.  The Fifth Circuit rarely finds that on-call time is compensable time.  See e.g. *Bright*, 934 F.2d at 671; *Brock*, 826 F.2d at 373-75.  At least one other case concerning workers in a city's water and sewer department found that on-call time similar to the time at issue in this case was not compensable.  See *Gilligan,* 986 F.2d at 412-13.

Similarly, compromising on Plaintiffs' contract claims is reasonable.  First, these claims are duplicative of the FLSA overtime claims and it is unlikely that this court would award a

double recovery under any theory.  Furthermore, there is significant case law indicating that the FLSA preempts contract claims for unpaid overtime.  Similarly, Plaintiffs would have to overcome the Doctrine of Sovereign Immunity, which Texas courts have broadly construed in recent years.

For these reasons, the Settlement Agreement presents a reasonable compromise of issues in actual dispute.

D.      The Settlement Terms are Fair to Plaintiffs

Clearly, the Settlement Agreement is fair and equitable to Plaintiffs.  Even after attorney's fees and costs, Plaintiffs will receive an amount that is at least equal to the actual unpaid overtime wages for lunchtime and pre-work activities.  The Defendant is compensating Plaintiffs for 100% of the unpaid wages.  In computing the unpaid wages, Defendant agreed to assume that Plaintiffs are entitled to the full thirty (30) minutes every single work-day during the statutory period.  Similarly, Defendants agreed to pay hourly supervisors for thirty (30) minutes of pre-work activity every single work-day for a two-year statutory period.  Defendant has also agreed to pay 100% liquidated damages on the amount representing wages.  In a trial, Defendant would assert that even if it violated the FLSA, it engaged in "good faith."  If a jury substantiated this defense, the Defendant likely would evade liquidated damages entirely.  Ultimately, the attorney fee in this case is nothing more than what the Named Plaintiffs and current Opt-In Plaintiffs agreed to pay in their retainer agreements.  The Settlement Agreement is also reasonable and justified in light of the results obtained.

The incentive awards are fair because they are related to the services rendered by the Named Plaintiffs and current Opt-In Plaintiffs for the benefit of the class.  Furthermore, the

incentive awards are in addition to 100% of unpaid overtime wages and 100% of liquidated damages.

For these reasons, the settlement terms are fair to the Plaintiffs.

E.      The Notice is Accurate and Informative

The notice sent to the putative class members should be reviewed an approved by the Court to prevent "misleading communications."  *Hoffman-Laroche v. Sperling*, 493 U.S. 165, 172 (1989).  The Supreme Court requires the notice be accurate so that the putative class "can make informed decisions about whether to participate."  *Id.* at 170.

Moreover, the district court is authorized to facilitate notice and the distribution of opt-in forms under § 216(b).  *Id.* at 168-69.  The notice procedure under § 216(b) merely permits potential plaintiffs to participate in the litigation and/or settlement by opting-in, and does not bind absent class members to the outcome of this case as in class action proceedings pursuant to Rule 23.

The proposed notice alerts opt-in and potential opt-in Plaintiffs as to the nature of the case, the amount to be paid to the Plaintiff, and informs him that to join the settlement he must timely return a signed release.  Because the notice is accurate and not misleading, it should be approved.

VII.
CONCLUSION

The parties believe that the settlement reached was a fair and reasonable compromise of the respective positions of both sides.  The parties therefore respectfully request the Court approve the Settlement Agreement, the attached Notice and Consent to Join, and enter the Proposed Order.  Entry of the Proposed Order will "secure the just, speedy, and inexpensive determination" of this action.  See Fed. R. Civ. P. 1.

Respectfully submitted,

By:  /s/ Paul K. Pearce, Jr.                    By: /s/ Justin G. Manchester

Paul K. Pearce, Jr.                            Robert J. Wiley
Texas Bar No. 15683600                         Texas Bar No. 24013750
Timothy A. Dunn                                Board Certified in Labor & Employment Law,
Texas Bar No. 24050542                         Texas Board of Legal Specialization
                                               Justin G. Manchester
MATTHEWS, STEIN, SHIELS, PEARCE,               Texas Bar No. 24070207
KNOTT, EDEN & DAVIS, L.L.P.
8131 LBJ Freeway, Suite 700                    ROB WILEY, P.C.
Dallas, Texas 75251                            1825 Market Center Blvd., Ste. 385
(972) 234-3400 Telephone                       Dallas, Texas 75207
(972) 234-1750 Facsimile                       Telephone: (214) 528-6500
ppearcej@mssattorneys.com                      Facsimile:  (214) 528-6511
tdunn@mssattorneys.com                         jmanchester@robwiley.com

ATTORNEYS FOR DEFENDANT                         ATTORNEYS FOR PLAINTIFFS
CITY OF PLANO